## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SORENSON COMMUNICATIONS, INC., *et al.*,[1] | ) Case No. 14-10454 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**INTERIM ORDER (I) AUTHORIZING THE USE
OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE
BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION
TO CERTAIN PREPETITION SECURED PARTIES PURSUANT TO
SECTIONS 105, 361, 362, 363, 507 AND 552 OF THE BANKRUPTCY
CODE, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING
A FINAL HEARING AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Sorenson Communications, Inc. ("Sorenson

Communications") and certain of its subsidiaries and affiliates, as debtors and debtors in

possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11

Cases"), for interim and final orders under sections 105, 361, 362, 363, 507 and 552 of title 11 of

the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004(h), 7062 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and local rules 2002-1(b)

and 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules") seeking, among other things:

    (a) authorization, pursuant to Bankruptcy Code section 363, for the Debtors to use

        Cash Collateral (as defined below) in which any First Lien Secured Party or

        Secured Note Party (each as defined below) has an interest pursuant to any

---

[1] The Debtors, together with the last four digits of each of the Debtors' federal tax identification number, are: Sorenson Communications, Inc. (0555); Allied Communications, Inc. (3611); CaptionCall, LLC (9444); SCI Holdings, Inc. (9815); Sorenson Communications Holdings, LLC (9866); Sorenson Communications of Canada, ULC (9719); and Sorenson Holdings, Inc. (0427). For the purpose of these chapter 11 cases, the service address for the Debtors is: 4192 South Riverboat Road, Salt Lake City, Utah 84123.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

Prepetition Loan Document (as defined below) (which Cash Collateral shall be used only in accordance with a budget, which budget shall be acceptable to the First Lien Agent (as defined below) and the Initial Holders,[3] each in their sole discretion, and subject only to the Permitted Variances (as defined below), annexed hereto as Exhibit 1 (as such budget may be extended, varied, supplemented, or otherwise modified in accordance with the provisions of this Interim Order or the Final Order (each as defined below), the "Approved Budget");[4]

(b)    approval of the form and manner of adequate protection being granted to each Prepetition Secured Party (as defined below) who has been granted prepetition liens and security interests under the following documents:

      i.    that certain First Lien Credit and Guaranty Agreement, dated as of March 15, 2013 (as amended, modified or otherwise supplemented from time to time, the "First Lien Credit Agreement") by and among Sorenson Communications, as borrower, SCI Holdings, Inc. and certain of its subsidiaries, as guarantors, the financial institutions from time to time party thereto (the "First Lien Lenders"), J.P. Morgan Securities LLC, in its capacity as joint lead arranger and bookrunner, JPMorgan Chase Bank, N.A., in its capacity as administrative agent (the "First Lien Agent"), swing line lender and issuing bank, and Goldman Sachs Bank USA, in its

---

[3] "Initial Holders" has the meaning ascribed to such term in the Support Agreement (as defined below), which contains such parties' agreements and undertakings with respect to the Debtors' restructuring.

[4] The budget attached hereto as Exhibit 1 shall be the Approved Budget, unless the First Lien Agent and the Initial Holders, each in their sole discretion, agree otherwise.

capacity as joint lead arranger, joint bookrunner and syndication agent; that certain Collateral Trust Agreement, dated as of March 15, 2013 (as amended, modified or otherwise supplemented from time to time, the "Collateral Trust Agreement"), by and among Sorenson Communications, SCI Holdings, Inc., the other grantors from time to time party thereto, JPMorgan Chase Bank, N.A., as First Lien Agent, and Wilmington Trust, National Association, as collateral trustee (the "Collateral Trustee" and, together with the First Lien Lenders and the First Lien Agent, the "First Lien Secured Parties"); the Credit Documents (as defined in the First Lien Credit Agreement) and all other agreements, documents and instruments delivered or entered into in connection with the First Lien Credit Agreement, including any guarantee agreements, pledge and collateral agreements and other security documents (collectively with the First Lien Credit Agreement and the Collateral Trust Agreement, the "First Lien Credit Facility Documents"); and

ii.    the Indenture for the 10.5% senior secured notes due 2015, dated as of January 22, 2010 (as amended, modified or otherwise supplemented from time to time, the "Secured Notes Indenture") among Sorenson Communications, as the issuer, and U.S. Bank National Association, as trustee (the "Indenture Trustee"), pursuant to which Sorenson Communications incurred indebtedness to

certain holders (the "Noteholders" and, collectively with the

Indenture Trustee, the "Secured Note Parties"), and all other

agreements, documents and instruments delivered or entered into

in connection with the Secured Notes Indenture, including any

guarantee agreements, pledge and collateral agreements and other

security documents (collectively with the Secured Notes Indenture,

the "Secured Notes Documents" and, collectively with the First

Lien Credit Facility Documents, the "Prepetition Loan

Documents");[5]

(c) modification of the automatic stay imposed by Bankruptcy Code section 362 to

the extent necessary to implement and effectuate the terms of this Interim Order;

(d) pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, that an interim hearing

(the "Interim Hearing") on the Motion be held before this Court to consider entry

of an interim order (this "Interim Order") which, among other things, authorizes

the use of Cash Collateral and grants adequate protection to the First Lien Secured

Parties and the Secured Note Parties (together, the "Prepetition Secured Parties");

and

(e) pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, that a final hearing

(the "Final Hearing") on the Motion be scheduled before this Court on ~~[ ]~~, 2014 *march 27*

to consider entry of a final order (the "Final Order") authorizing the use of Cash

---

[5] In connection with the First Lien Credit Facility Documents and the Secured Notes Documents, Sorenson
Communications, SCI Holdings, Inc., the First Lien Agent and the Indenture Trustee entered into that certain
Amended and Restated Intercreditor Agreement, dated as of January 22, 2010 (as amended, supplemented or
otherwise modified from time to time, the "Intercreditor Agreement").

Collateral and granting adequate protection to the Prepetition Secured Parties, both on a final basis;

and upon consideration of the *Declaration of Scott Sorensen, Chief Financial Officer of Sorenson Communications Holdings, LLC*, filed in support of the Debtors' first-day pleadings; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference referring to the bankruptcy judges for the District of Delaware any or all proceedings arising under title 11 or arising in or related to a case under title 11, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion and the relief requested therein having been provided to (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (c) counsel to the administrative agent of the Debtors' prepetition first lien credit facility; (d) counsel to the indenture trustee for the Debtors' prepetition senior secured notes; (e) counsel to the ad hoc group of prepetition senior secured note holders; (f) the Internal Revenue Service, (g) the Securities and Exchange Commission, (h) the Federal Communications Commission, and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002; and such notice having been due and proper under the circumstances and in compliance with Bankruptcy Rule 4001(b) and Local Rule 4001-2; and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion, and the Interim Hearing having been held by this Court on [___], 2014; and the Court having determined that the legal and factual bases set

forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1.　　*Disposition*.  The Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of the Interim Order that have not been withdrawn, waived or settled, and all reservation of rights included therein, are denied and overruled on their merits.  This Interim Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062 and 9014.

2.　　*Petition Date*.  On March 3, 2014 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.  On [ March 4 ], 2014, this Court entered an order approving the joint administration of the Chapter 11 Cases.

3.　　*Debtors in Possession*.  The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in the Chapter 11 Cases.

4.　　*Jurisdiction; Venue*.  This Court has jurisdiction over the Chapter 11 Cases, the parties affected thereby, and the Debtors' property pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  Venue for the Chapter 11 Cases and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.　　*Statutory Committee*.  As of the date hereof, the U.S. Trustee has not appointed any official committee in the Chapter 11 Cases.

6.      *Debtors' Stipulations.*  The Debtors admit, acknowledge, stipulate and agree that:

(a)      *First Lien Obligations.*  As of the Petition Date, the Debtors were unconditionally indebted and liable to the First Lien Secured Parties for all of the obligations pursuant to, and in accordance with the terms of, the First Lien Credit Agreement in an aggregate principal amount of approximately $545 million, plus prepetition interest thereon and fees, expenses, charges and other obligations incurred in connection therewith as provided in the First Lien Credit Facility Documents and certain hedging and cash management obligations owing to the First Lien Lenders and certain of their affiliates (collectively, the "First Lien Prepetition Obligations"), secured by first priority liens on and security interests (collectively, the "First Priority Liens") in substantially all of the Debtors' assets including Cash Collateral, as more particularly described in and on the terms set forth in the First Lien Credit Facility Documents (the "First Lien Prepetition Collateral"), granted to, or for the benefit of, any and all of the First Lien Secured Parties.

(b)      As of the Petition Date, all claims in respect of the First Lien Prepetition Obligations (i) constitute legal, valid, binding and nonavoidable obligations of the Debtors and (ii) are not, and shall not be, subject to any avoidance, disallowance, disgorgement, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind or nature under the Bankruptcy Code or any other applicable law or regulation.

(c)      The First Priority Liens: (i) constitute valid, binding, enforceable, nonavoidable, and properly perfected first priority liens on the First Lien Prepetition Collateral that, prior to the entry of this Interim Order, were senior in priority over any and all other liens on the First Lien Prepetition Collateral, subject only to those liens explicitly permitted by the

First Lien Credit Facility Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable liens senior in priority to the First Priority Liens on the Petition Date, the "First Lien Permitted Liens"), if any; (ii) shall not be subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation; and (iii) are subject and subordinate only to (A) the Carve-Out (as defined below) and (B) the First Lien Permitted Liens, if any.

(d)     The Debtors each irrevocably waive, subject to paragraph 23 herein, for themselves and their direct and indirect subsidiaries any right to challenge or contest in any way the perfection, validity, or enforceability of the First Priority Liens or the allowance, validity or enforceability of the First Lien Prepetition Obligations and the First Lien Credit Facility Documents.  The Debtors believe that the First Lien Prepetition Obligations constitute allowable, fully secured claims against the Debtors' estates.

(e)     None of the First Lien Secured Parties are or shall be deemed to be control persons or insiders of the Debtors by virtue of any of the actions taken by such parties in respect of or in connection with the First Lien Prepetition Obligations or the First Lien Credit Facility Documents.

(f)     *Second Lien Obligations*.  As of the Petition Date, the Debtors were unconditionally indebted and liable to the Secured Note Parties in respect of obligations under the Secured Notes Indenture for (i) the aggregate principal amount of approximately $735 million on account of outstanding notes under the Secured Notes Indenture (plus accrued and unpaid interest thereon) and (ii) unpaid fees, expenses, charges and other obligations incurred in connection therewith as provided in the Secured Notes Documents (the "Secured Notes

Obligations" and, together with the First Lien Prepetition Obligations, the "Prepetition Obligations"), secured by second-priority liens on and security interests (collectively, the "Second Priority Liens" and, collectively with the First Priority Liens, the "Prepetition Liens") in substantially all of the Debtors' assets including Cash Collateral, as more particularly described in and on the terms set forth in the Secured Notes Documents (the "Second Lien Prepetition Collateral" and, together with the First Lien Prepetition Collateral, the "Prepetition Collateral"), granted to, or for the benefit of, any or all of the Secured Note Parties pursuant to and in connection with the Secured Notes Documents.

(g)     As of the Petition Date, all claims in respect of the Secured Notes Obligations (i) constitute legal, valid, binding and nonavoidable obligations of the Debtors and (ii) are not, and shall not be, subject to any avoidance, disallowance, disgorgement, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind or nature under the Bankruptcy Code or any other applicable law or regulation.

(h)     The Second Priority Liens: (i) constitute valid, binding, enforceable, nonavoidable, and properly perfected second priority liens on the Second Lien Prepetition Collateral that, prior to the entry of this Interim Order, were senior in priority over any and all other liens on the Second Lien Prepetition Collateral, subject only to the First Priority Liens and those liens explicitly permitted by the Secured Notes Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable liens senior in priority to the Second Priority Liens on the Petition Date, the "Second Lien Permitted Liens" and, together with the First Lien Permitted Liens, the "Permitted Liens"), if any; (ii) shall not be subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual or

9

otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation; and (iii) are subject and subordinate only to (A) the First Priority Liens, (B) the Carve-Out (as defined below) and (C) the Second Lien Permitted Liens, if any.

(i)     The Debtors each irrevocably waive, subject to paragraph 23 herein, for themselves and their direct and indirect subsidiaries any right to challenge or contest in any way the perfection, validity, or enforceability of the Second Priority Liens or the allowance, validity or enforceability of the Secured Notes Obligations and the Secured Notes Documents.  The Debtors believe that the Secured Notes Obligations constitute allowable, fully secured claims against the Debtors' estates.

(j)     None of the Secured Note Parties are or shall be deemed to be control persons or insiders of the Debtors by virtue of any of the actions taken by such parties in respect of or in connection with the Secured Notes Obligations or the Secured Notes Documents.

(k)     As of the Petition Date, the Debtors have not brought and, subject to paragraph 23 herein, irrevocably waive their ability to bring and are not aware of claims, objections, challenges, causes of action, including, without limitation, avoidance actions under chapter 5 of the Bankruptcy Code, against the Prepetition Secured Parties or the Released Parties (as defined below) arising out of or related to the Prepetition Obligations or the Prepetition Liens.

(l)     As of the Petition Date, there were no other perfected liens on or security interests in the Prepetition Collateral except for the Prepetition Liens and the Permitted Liens.

7.     *Cash Collateral.*   For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in Bankruptcy Code section 363, in

which any or all of the Prepetition Secured Parties have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), in each case whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise. The Debtors represent and stipulate that all of the Debtors' cash, cash equivalents, negotiable instruments, investment property and securities, including the cash, cash equivalents, negotiable instruments, investment property and securities in their deposit accounts, wherever located, constitute the Cash Collateral of the Prepetition Secured Parties.

8.      *Use of Cash Collateral*.  The Debtors have an immediate and critical need to use Cash Collateral to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs. The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and other financial accommodations is vital to the preservation and maintenance of the Debtors' going concern values and successful reorganization. The Debtors' use of Cash Collateral will be in accordance with the terms of this Interim Order and the Approved Budget, subject to Permitted Variances.

9.      *Bankruptcy Code Sections 552(b) and 506(c)*.  In light of the Prepetition Secured Parties' agreement to subordinate their liens and claims to the Carve-Out, to permit the use of the Prepetition Collateral and to permit the use of their Cash Collateral for payments made in accordance with the Approved Budget, subject to Permitted Variances and the terms of this Interim Order, subject to the Final Hearing and entry of the Final Order, each of the Prepetition Secured Parties is entitled to (a) a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b) and (b) a waiver of the provisions of Bankruptcy Code section 506(c).

Upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of the Prepetition Collateral, including the Cash Collateral. Additionally, upon entry of the Final Order, except to the extent of the Carve-Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral, the Collateral, or the Prepetition Secured Parties pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the First Lien Agent and the Initial Holders and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Secured Parties.

10.    *Good Cause Shown; Best Interest.*  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  The Motion and this Interim Order comply with Local Rule 4001-2.  Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  The use of Cash Collateral in accordance with this Interim Order is therefore in the best interest of the Debtors' estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing business and further enhance the Debtors' prospects for a successful restructuring.  In the Motion, the Debtors have sought pursuant to this Interim Order the use of only that amount of Cash Collateral that is necessary to avoid immediate and irreparable harm to their estates.

11.     *Consent To Use Cash Collateral.*

(a)     Subject to the terms of this Interim Order, upon entry of this Interim Order, the Debtors are authorized to use Cash Collateral in accordance with the terms, conditions and limitations set forth in this Interim Order and the Approved Budget (including any Permitted Variances). Any dispute in connection with the use of Cash Collateral shall be heard by this Court.

(b)     The Prepetition Secured Parties shall have no obligation with respect to the Debtors' use of the Prepetition Collateral or Cash Collateral, other than as set forth herein (including the Carve-Out), and shall not be obligated to ensure or monitor the Debtors' compliance with the Approved Budget or to pay (directly or indirectly from their Collateral or Prepetition Collateral) any expenses incurred or authorized to be incurred pursuant to the Approved Budget. Cash Collateral used under this Interim Order shall only be used by the Debtors in accordance with the Approved Budget, including any Permitted Variances, and this Interim Order.

12.     *Support Agreement.* On February 27, 2014, the Debtors entered into that certain restructuring support agreement (as amended, modified or supplemented from time to time in accordance with its terms, the "Support Agreement") with certain holders of equity interests in Sorenson Communications Holdings, LLC and certain Noteholders party thereto, which contains the parties' agreements and undertakings with respect to the Debtors' restructuring.

13.     *Budget; Permitted Variance.* Every week (beginning with the first full week after entry of this Interim Order), on the last business day of such week, the Debtors shall deliver to the advisors for the Initial Holders and counsel to the First Lien Agent a weekly variance report from the previous week comparing the actual cash receipts and disbursements of the Debtors

with the receipts and disbursements in the Approved Budget with respect to the applicable period

(the "Budget Variance Report").  The Budget Variance Report shall include, among other

things:  (a) details regarding any and all restructuring costs paid, including amounts paid and

specifying the names of the advisors receiving payment of any amounts; and (b) a comparison of

each week's performance against the Approved Budget.  The Debtors shall ensure that at no time

shall  there be an unfavorable variance by 15% or more from the "Total Disbursements" line

item in the Approved Budget, excluding payments for Professional Fees (as defined herein), or

an unfavorable variance by 15% or more from the "Total Cash Flow" line item in the Approved

Budget, excluding payments for Professional Fees (each, a "Permitted Variance"); *provided that*,

with respect to each of the foregoing, such variance shall be tested the third week after entry of

this Interim Order (testing cumulative variance for the previous two weeks), the fifth week after

entry of this Interim Order (testing cumulative variance for the previous four weeks), and then

every other week on a cumulative rolling four (4) week basis.

14.    *Termination of Cash Collateral Usage*.  Notwithstanding anything in this Interim

Order to the contrary, and unless the First Lien Agent and the Initial Holders otherwise consent

in writing in their sole discretion, the use of Cash Collateral authorized herein shall terminate

without prior notice or order of the Court or any further action by any Prepetition Secured Party,

upon the occurrence of the "Termination Date."  The Termination Date shall occur (notice of

which shall be provided thereafter to the Debtors, the U.S. Trustee, and any committee appointed

in the Chapter 11 Cases) on the earliest to occur of (each of the following, a "Termination

Event"):

i.    The date that is 75 days from the Petition Date;

ii.    Upon the expiration of the Approved Budget unless a supplemental
Approved Budget has been agreed upon by the Initial Holders and
the First Lien Agent;

iii.    The date that is 40 days after the Petition Date if a Final Order (provided that such Final Order has not been reversed, vacated, stayed, unless such stay has been vacated, or appealed, unless such appeal has been dismissed or otherwise finally resolved) authorizing the use of Cash Collateral, in accordance with the terms of this Interim Order and otherwise acceptable to the Initial Holders and the First Lien Agent, has not been entered;

iv.    Five (5) business days after the date (A) the Initial Holders or (B) the First Lien Agent provides the Debtors with written notice of the Debtors' failure to comply with any of the terms or conditions of this Interim Order, including, without limitation, the payment by the Debtors of any expenses other than in accordance with the Approved Budget (subject to Permitted Variances);

v.    The date an application, motion or other pleading is filed by the Debtors seeking to amend, modify, supplement or extend this Interim Order without the prior written consent of the Initial Holders and the First Lien Agent; or the date of entry of any order reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the prior written consent of the Initial Holders and the First Lien Agent;

vi.    The date any provision of this Interim Order shall for any reason cease to be valid and binding or the Debtors shall so assert in any pleading filed in any court;

vii.    The date an application is filed by the Debtors for the approval of any superpriority claim or any lien in the Chapter 11 Cases which is *pari passu* with or senior to any or all of the Adequate Protection Liens, Superpriority Claims, or Prepetition Liens (each as defined herein), excluding any claim arising under the Carve-Out, without the prior written consent of the Initial Holders and the First Lien Agent;

viii.    The effective date of any confirmed chapter 11 plan in the Chapter 11 Cases;

ix.    Unless otherwise agreed in writing by the Initial Holders and the First Lien Agent, the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors;

x.    Unless otherwise agreed in writing by the Initial Holders, five (5) business days after a notice of the termination of the Support Agreement has been delivered by any party thereto;

xi.    The date an order is entered by the Court granting relief from the automatic stay to the holder or holders of any security interest to

permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any asset of the Debtors with a value in excess of $100,000;

xii. The date the plan of reorganization filed pursuant to the Support Agreement on the first day of the Chapter 11 Cases is amended or modified, or if any Debtor files a pleading seeking to amend or modify such plan in any manner that (i) alters the treatment of the claims of any First Lien Secured Party in such a way as to render such claim impaired (as defined in the Bankruptcy Code) or (ii) adversely affects the releases and exculpatory protections set forth in such plan of reorganization in favor of any First Lien Secured Party;

xiii. The date (a) the Chapter 11 Cases shall be dismissed or converted to cases under chapter 7 of the Bankruptcy Code or the Debtors shall file a motion or other pleading seeking the dismissal or conversion of the Chapter 11 Cases pursuant to Bankruptcy Code section 1112 or otherwise, or (b) a trustee or an examiner with expanded powers is appointed or elected in any or all of the Chapter 11 Cases or the Debtors apply for, consent to, or acquiesce in, any such appointment without the prior written consent of the Initial Holders and the First Lien Agent;

xiv. The date the Debtors commence any action against any or all of the Prepetition Secured Parties with respect to any or all of the Prepetition Obligations or the Prepetition Liens without the prior written consent of the Initial Holders and the First Lien Agent;

xv. The withdrawal, amendment, modification of, or filing of a pleading by the Debtors seeking to withdraw, amend or modify the plan of reorganization filed pursuant to the Support Agreement on the first day of the Chapter 11 Cases, in a manner not acceptable to the Initial Holders;

xvi. The date an order is entered by the Court invalidating, disallowing, avoiding, recharacterizing, subordinating, offsetting or limiting in any respect, as applicable, either (A) the legality, enforceability, priority, validity and binding nature of any or all of the Prepetition Liens or Adequate Protection Liens securing the Prepetition Obligations or (B) any of the Prepetition Obligations or the Superpriority Claims, in each case without the prior written consent of the Initial Holders and the First Lien Agent; or

xvii. The date any material contract of the Debtors is rejected under section 365 of the Bankruptcy Code or any material property of the

Debtors is sold, in each instance, without the express written consent of the Initial Holders and the First Lien Agent.

15.    The Debtors' authority to use Cash Collateral shall automatically terminate upon the occurrence of the Termination Date, unless waived in writing by the Initial Holders and the First Lien Agent, where applicable, all without further order or relief from the Court.  Upon the occurrence of the Termination Date, all Adequate Protection Obligations (as defined below) shall become due and payable, subject to prior provision for the Carve-Out, and the Prepetition Secured Parties shall have all rights and remedies provided in this Interim Order and under applicable law, in each case, subject to the terms of the Intercreditor Agreement. Notwithstanding anything herein or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under this Interim Order shall survive the Termination Date.

16.    *Restrictions on Use of Cash Collateral.*

(a)    From and after the Petition Date, all proceeds of the Prepetition Collateral, including, without limitation, all of the Debtors' existing or future Cash Collateral, shall not, directly or indirectly, be used for any payments, expenses or disbursements of the Debtors except for those payments, expenses and/or disbursement that are expressly permitted under this Interim Order or other order entered by this Court (entered pursuant to motions which are acceptable to the Initial Holders and the First Lien Agent and which orders shall be acceptable to the Initial Holders and the First Lien Agent) and in all cases which are consistent with the Approved Budget, including any Permitted Variance.  For the avoidance of doubt, the Approved Budget shall not be replaced, extended, varied, supplemented or otherwise modified at any time without the consent of the Initial Holders and the First Lien Agent.

(b)    Subject to the Carve-Out and entry of a Final Order, no administrative expense claims, including fees and expenses of professionals, shall be charged or assessed against or recovered from any or all of the Prepetition Collateral or Collateral[6] or attributed to any or all of the Prepetition Secured Parties with respect to their respective interests in the Prepetition Collateral or Collateral pursuant to the provisions of Bankruptcy Code section 506(c) or otherwise, through or on behalf of the Debtors without the prior written consent of the affected Prepetition Secured Parties, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Prepetition Secured Parties. Except as set forth herein, the Prepetition Secured Parties have not consented or agreed to the additional use of the Prepetition Collateral or the Collateral and nothing contained herein shall be deemed a consent by the Prepetition Secured Parties to any charge, lien, assessment or claim, excluding the Carve-Out, against the Prepetition Collateral or the Collateral.  The Prepetition Secured Parties shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or the Prepetition Collateral.

(c)    Subject to paragraph 23 of this Interim Order, no Collateral, Cash Collateral, Prepetition Collateral or proceeds thereof, or any portion of the Carve-Out may be used directly or indirectly by the Debtors, any committee appointed in the Chapter 11 Cases, any trustee

---

[6] As used herein, "Collateral" means all property, whether existing on the Petition Date or thereafter created, acquired or arising and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to Bankruptcy Code section 541(a)), including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, real property, leases, fixtures, deposit accounts, commercial tort claims, securities accounts, investment property, supporting obligations, machinery and equipment, all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly owned subsidiaries, money and causes of action (including causes of action arising under Bankruptcy Code section 549 and any related action under Bankruptcy Code section 550) and subject to entry of the Final Order, the proceeds of any causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 550 (except as provided above) or 553, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions and profits of any of the collateral described above.  For the avoidance of doubt, Collateral includes the Prepetition Collateral and excludes the Excluded Assets (as defined herein).

appointed in the Chapter 11 Cases or any successor case(s), or any other person, party or entity

to: (i) investigate, object, contest, or raise any defense to the validity, perfection, priority, extent,

or enforceability of any or all of the Prepetition Obligations including the liens with respect

thereto or any action purporting to do any of the foregoing; (ii) investigate, assert or prosecute

any Claims and Defenses (as defined below) against any or all of the Prepetition Secured Parties

or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or

advisors or any action purporting to do the foregoing; (iii) prevent, hinder, or otherwise delay

any or all of the Prepetition Secured Parties' assertion, enforcement, or realization on the

Prepetition Obligations, Cash Collateral, the Prepetition Liens, the Adequate Protection

Obligations, or the Adequate Protection Liens in accordance with this Interim Order; (iv) seek to

modify any of the rights granted to the Prepetition Secured Parties hereunder; (v) apply to the

Court for authority to approve superpriority claims or grant liens in the Collateral or any portion

thereof that are senior to, or on parity with, the Adequate Protection Liens, Superpriority Claims

or Prepetition Liens, unless all Prepetition Obligations under the Prepetition Loan Documents,

this Interim Order and the Final Order have been refinanced or paid in full in cash or otherwise

agreed to in writing by the First Lien Agent or, to the extent permitted by the Intercreditor

Agreement, the Initial Holders; or (vi) seek to pay any amount on account of any claims arising

prior to the Petition Date unless such payments are agreed to in writing by the Initial Holders and

the First Lien Agent or consistent with the Approved Budget, including any Permitted Variance;

*provided*, *however*, that up to $25,000 of Cash Collateral in the aggregate may be used to pay the

allowed fees and expenses of counsel retained by any committee appointed in the Chapter 11

Cases incurred directly in connection with investigating, but not preparing, initiating or

prosecuting, any Claims and Defenses against the Prepetition Secured Parties or with regard to the Prepetition Obligations or the Prepetition Liens.

17.    *Adequate Protection of Interests*.  Each Prepetition Secured Party is entitled, pursuant to Bankruptcy Code sections 361 and 363(c) and (e), to adequate protection of its interests in the Prepetition Collateral for and equal in amount to the aggregate diminution in value (the "Diminution in Value") of such Prepetition Secured Party's interests in the Prepetition Collateral (the "Adequate Protection Obligations") during the period from and including the Petition Date through and including the date of termination of the use of Cash Collateral (the "Interim Period"), calculated in accordance with Bankruptcy Code section 506(a), including, without limitation, any Diminution in Value resulting from the depreciation, physical deterioration, sale, lease, use or decline in market value of the Prepetition Collateral (including, without limitation, Cash Collateral) and the imposition of the automatic stay under Bankruptcy Code section 362.  For the avoidance of doubt, the use of Cash Collateral for any purpose shall constitute a Diminution in Value of the Prepetition Collateral and shall entitle the Prepetition Secured Parties to dollar-for-dollar Adequate Protection Liens (as defined below) in accordance with the terms of this Interim Order.

18.    *First Lien Adequate Protection*.  As adequate protection, the Collateral Trustee and the First Lien Agent, on behalf of themselves and the other First Lien Secured Parties, are granted the following (collectively, the "First Lien Adequate Protection"):

(a)    Adequate Protection Lien.  As security for and solely to the extent of any Diminution in Value of the First Lien Secured Parties' interests in the Prepetition Collateral during the Interim Period, the Collateral Trustee is hereby granted for its benefit and the benefit of the First Lien Lenders, effective and perfected as of the date of entry of this Interim Order and

without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements, valid, enforceable, nonavoidable and fully and automatically perfected first-priority postpetition security interests in and liens (the "First Lien Adequate Protection Liens") on all Collateral of the Debtors other than the Excluded Assets (as defined below), subject and subordinate only to (i) any First Lien Permitted Liens and (ii) the Carve-Out, in accordance with the terms and conditions set forth in this Interim Order.

      (b)    Superpriority Claim. To the extent of any Diminution in Value of the First Lien Secured Parties' interests in the Prepetition Collateral during the Interim Period, the First Lien Agent, on behalf of itself and the First Lien Lenders, is hereby granted a first-priority administrative expense claim (the "First Lien Superpriority Claim") as provided for in Bankruptcy Code section 507(b). The First Lien Superpriority Claim shall, subject and subordinate only to the Carve-Out, be an allowed claim against each Debtor (jointly and severally) with priority over any and all administrative expenses and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, which allowed First Lien Superpriority Claim shall be payable from and have recourse to all Collateral of the Debtors. Nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the First Lien Agent, the Collateral Trustee or the other First Lien Secured Parties hereunder is insufficient to

compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases.

(c)    Postpetition Interest.  Immediately upon entry of this Interim Order, the Debtors shall pay to the First Lien Agent (on behalf of the First Lien Secured Parties), on an ongoing basis, the current cash payment of interest at the applicable rates set forth in, and at the times provided for in, the First Lien Credit Agreement (the "Interest Payments") (whether or not such Interest Payments are included in the Approved Budget).

(d)    Fees and Expenses.  Immediately upon entry of this Interim Order, the Debtors are authorized and directed to pay all accrued and unpaid prepetition and postpetition fees and expenses of the First Lien Secured Parties pursuant to the First Lien Credit Facility Documents, including reasonable and documented unpaid fees and expenses of the First Lien Professionals (as defined below).  In addition, during the Interim Period, the Debtors shall, in accordance with the First Lien Credit Agreement and the Collateral Trust Agreement, promptly pay or reimburse the reasonable and documented prepetition and postpetition fees, costs and out-of-pocket expenses of (i) Latham & Watkins LLP, counsel to the First Lien Agent, (ii) Richards, Layton & Finger, P.A., local counsel to the First Lien Agent, (iii) a financial advisor to the First Lien Agent, in the event the First Lien Agent determines that, based on the circumstances, it is necessary and in its best interests to retain a financial advisor as provided for under the First Lien Credit Agreement, (iv) counsel to the Collateral Trustee and (v) local counsel to the Collateral Trustee (collectively, the "First Lien Professionals"), in each case, in accordance with the engagement letters of such professionals and without further order of, or application to, this Court or notice to any party; *provided that* if the payment of such aggregate reasonable and documented fees and expenses of the First Lien Professionals causes the Debtors' expenditures

to exceed amounts permitted by the Approved Budget, such excess payments shall not constitute a Termination Event. After delivery of a statement of fees and expenses (redacted for privilege), the Debtors are authorized and directed to pay such fees, costs and expenses within ten (10) business days of delivery of an invoice to the Debtors, in accordance with the terms of this Interim Order, without the First Lien Agent or the Collateral Trustee having to file any further application with this Court for approval or payment of such fees, costs and expenses. All amounts paid as adequate protection are deemed permitted uses of Cash Collateral.

(e)     Recharacterization. Notwithstanding anything to the contrary set forth herein, if the Court finally determines that any or all of the First Lien Secured Parties are not entitled to receive all or any portion of the interest, fees and expenses paid pursuant to paragraphs 18(c) and (d) of this Interim Order, then such amounts paid to or for the benefit of the applicable First Lien Secured Parties will instead be deemed recharacterized as repayments of principal in reduction of the applicable First Lien Prepetition Obligations or subject to disgorgement, in each case as ordered by the Court as part of such final determination.

(f)     Information. During the Interim Period, the Debtors shall continue to provide the First Lien Agent with financial and other reporting in accordance with the First Lien Credit Agreement. Any information provided pursuant to this paragraph 18 shall be subject to the confidentiality provisions of the First Lien Credit Agreement, which provisions shall remain in full force and effect.

19.     *Second Lien Adequate Protection.* As adequate protection, the Indenture Trustee, on behalf of itself and the Noteholders, is hereby granted the following (collectively, the "Second Lien Adequate Protection" and, together with the First Lien Adequate Protection, the "Adequate Protection"):

(a)     Adequate Protection Liens.  As security for and solely to the extent of any

Diminution in Value of the Secured Note Parties' interests in the Prepetition Collateral, in

accordance with, and subject to the terms of, the Intercreditor Agreement, the Indenture Trustee

is hereby granted for its benefit and the benefit of the Noteholders, effective and perfected as of

the date of entry of this Interim Order and without the necessity of the execution of mortgages,

security agreements, pledge agreements, financing statements or other agreements, valid,

enforceable, nonavoidance and fully and automatically perfected second-priority postpetition

security interests in and liens on all the Collateral of the Debtors other than the Excluded Assets

(the "Second Lien Adequate Protection Liens" and, together with the First Lien Adequate

Protection Liens, the "Adequate Protection Liens"), subject and subordinate only to (i) the First

Priority Liens, (ii) the First Lien Adequate Protection Liens, (iii) any Permitted Liens and (iv) the

Carve-Out.

(b)     Superpriority Claim.  To the extent of any Diminution in Value of the

Secured Note Parties' interests in the Prepetition Collateral during the Interim Period, the

Indenture Trustee, on behalf of itself and the Noteholders, is hereby granted a second-priority

administrative expense claim (the "Second Lien Superpriority Claim" and, together with the First

Lien Superpriority Claim, the "Superpriority Claims") as provided for in Bankruptcy Code

section 507(b).  The Second Lien Superpriority Claim shall, subject and subordinate only to

(a) the First Priority Liens, (b) the First Lien Superpriority Claim and (c) the Carve-Out, be an

allowed claim against each Debtor (jointly and severally) with priority over any and all

administrative expenses and all other claims against the Debtors, now existing or hereafter

arising, of any kind whatsoever, including, without limitation, all other administrative expenses

of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all other

administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, which allowed Second Lien Superpriority Claim shall be payable from and have recourse to all Collateral of the Debtors. Nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the Indenture Trustee or the Noteholders hereunder is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases.

(c)    Fees and Expenses.  Immediately upon entry of this Interim Order, the Debtors are authorized and directed to pay all accrued and unpaid fees and expenses of the Secured Note Parties, including reasonable and documented unpaid fees and expenses of the Second Lien Professionals (as defined below).  In addition, during the Interim Period, the Debtors shall, in accordance with the Secured Notes Indenture, promptly pay or reimburse the reasonable and documented fees, costs and out-of-pocket expenses incurred by the Secured Note Parties including, without limitation, the fees, costs and expenses of (i) Dorsey & Whitney, LLP, counsel to the Indenture Trustee, (ii) Akin Gump Strauss Hauer & Feld LLP, counsel to the Initial Holders, (iii) Houlihan Lokey, Inc., financial advisor to the Initial Holders, (iv) Blank Rome LLP, local counsel to the Initial Holders, and any consultants or other advisors retained by the Initial Holders in connection with the Chapter 11 Cases (collectively, the "Second Lien Professionals"), in each case, in accordance with the engagement letters of such professionals and without further order of, or application to, this Court or notice to any party; *provided that* if the payment of such aggregate reasonable and documented fees and expenses of the Second Lien

Professionals causes the Debtors' expenditures to exceed amounts permitted by the Approved

Budget, such excess payments shall not constitute a Termination Event. After delivery of a

statement of fees and expenses (redacted for privilege) in accordance with each party's

applicable engagement letter, the Debtors are authorized and directed to pay all fees, costs and

expenses within ten (10) business days of delivery of an invoice to the Debtors, in accordance

with the terms of this Interim Order, without the Indenture Trustee or the Initial Holders having

to file any further application with this Court for approval or payment of such fees, costs and

expenses. All amounts paid as adequate protection are deemed permitted uses of Cash

Collateral.

      (d)    Recharacterization. Notwithstanding anything to the contrary set forth

herein, if the Court finally determines that any or all of the Secured Note Parties are not entitled

to receive all or any portion of the fees and expenses paid pursuant to paragraph (c) of this

Interim Order, then such amounts paid to or for the benefit of the applicable Secured Note

Parties will instead be deemed recharacterized as repayments of principal in reduction of the

applicable Secured Notes Obligations or subject to disgorgement, in each case as ordered by the

Court as part of such final determination.

     20.    *Findings Regarding Adequate Protection.* The use of Cash Collateral has been

negotiated in good faith and at arms' length among the Debtors, the First Lien Agent, on behalf

of itself and the other First Lien Secured Parties, and the Indenture Trustee, on behalf of itself

and the other Secured Note Parties, and the use of the Prepetition Collateral, including Cash

Collateral, by the Debtors in accordance with the terms of this Interim Order shall be deemed to

have been extended, issued or made in "good faith" to fund the administration of the Debtors'

estates and continued operation of their businesses. The Prepetition Secured Parties are entitled

to the Adequate Protection as set forth herein pursuant to Bankruptcy Code sections 361, 362, 363 and 507(b). Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and use of Cash Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the Prepetition Secured Parties' consent thereto. Under the circumstances, the Court finds that the above-described adequate protection is consistent with the Bankruptcy Code and is reasonable. The Prepetition Secured Parties, however, may request further or different adequate protection, and the Debtors or any other party in interest may contest any such request, which shall not constitute an action that gives rise to a Termination Event under the Support Agreement (as defined therein).

21.    *Excluded Assets.* The "Excluded Assets" are (i) any and all avoidance, recovery, subordination, or other claims, actions or remedies that may be brought by or on behalf of the Debtors or their estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under Bankruptcy Code sections 502, 510, 542, 544, 545 and 547 through and including 553 (collectively, "Avoidance Actions") arising under or permitted by and any other avoidance claims and avoidance causes of action arising under or permitted by state or federal law ~~and any proceeds or property recovered,~~ ~~unencumbered or otherwise the subject of successful Avoidance Actions, whether by judg~~ment, ~~settlement or otherwise,~~ (ii) any asset that the Debtors are prohibited by law or contract from encumbering (after giving effect to the applicable anti-assignment provisions of the Uniform Commercial Code, the provisions of the Bankruptcy Code and/or other applicable law) and (iii) any of the outstanding capital stock of a Controlled Foreign Corporation[7] or Domestic

---

[7] "Controlled Foreign Corporation" has the meaning ascribed to such term in Section 957 of the Internal Revenue Code.

Foreign Holdco[8] in excess of 65% of the voting power of all classes of capital stock of such

Controlled Foreign Corporation or Domestic Foreign Holdco entitled to vote. For the avoidance

of doubt, proceeds, products, offspring or profits of Avoidance Actions do not constitute

Excluded Assets.

22.    *Carve-Out.* As used in this Interim Order, "Carve-Out" shall mean, upon the

Termination Date, the sum of: (a) all fees required to be paid to the clerk of the Bankruptcy

Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code

and/or section 3717 of title 31 of the United States Code, (b) fees and expenses of up to $50,000

incurred by a trustee if one is appointed pursuant to Bankruptcy Code section 726(b) and (c) in

accordance with the Approved Budget, any and all accrued and unpaid fees, disbursements, costs

and expenses (the "Professional Fees") incurred by professionals or professional firms retained

by the Debtors or their estates pursuant to section 327, 328 or 363 of the Bankruptcy Code and

any statutory committee appointed in the Debtors' Chapter 11 Cases pursuant to section 1103 of

the Bankruptcy Code (collectively, the "Professionals"), which Professional Fees are (x) allowed

by the Bankruptcy Court at any time and (y) were incurred at any time on or before the first

Business Day following delivery by the First Lien Agent and the Initial Holders to counsel to

the Debtors identified in paragraph 41, the U.S. Trustee and counsel to any committee appointed

in the Chapter 11 Cases written notice (the "Carve-Out Trigger Notice"), which notice may be

delivered at any time following the occurrence and during the continuation of any Termination

Event, stating that the Carve-Out Cap (as defined below) has been invoked; and (d) the

Professional Fees allowed by the Bankruptcy Court in an aggregate amount not exceeding

$1,000,000 (the "Carve-Out Cap"), which Professional Fees are incurred by the Professionals

---

[8] "Domestic Foreign Holdco" means any restricted subsidiary of the borrower that was formed under the laws of the United States or any state of the United States or the District of Columbia substantially all of the assets of which consist of equity interests of Controlled Foreign Corporations.

after the first Business Day following delivery by the First Lien Agent of the Carve-Out Trigger Notice in accordance with the immediately preceding clause (c); *provided that* (I) the Carve-Out shall not be available to pay any Professional Fees incurred by any party, including the Debtors or any committee appointed in the Chapter 11 Cases or any Professionals engaged thereby, in connection with:  (i) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the Prepetition Secured Parties, it being understood that up to an aggregate of $25,000 shall be made available to any committee appointed in the Chapter 11 Cases for investigation costs, as described in paragraph 23 below; including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the Prepetition Loan Documents in favor of the Prepetition Secured Parties including, without limitation, for lender liability or pursuant to Bankruptcy Code sections 105, 510, 544, 547, 548, 549, 550 or 552, applicable nonbankruptcy law or otherwise; (ii) attempts to modify any of the rights granted to the Prepetition Secured Parties hereunder; (iii) attempts to prevent, hinder or otherwise delay any of the Prepetition Secured Parties' assertion, enforcement or realization upon any Collateral in accordance with the Prepetition Loan Documents, the Intercreditor Agreement and this Interim Order; or (iv) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court.  Any claim incurred in connection with any of the activities described above (other than as permitted pursuant to paragraph 23 hereof) shall not be allowed, treated or payable as an administrative expense claim for purposes of Bankruptcy Code section 1129(a)(9)(A).  The Carve-Out shall not be reduced by the payment of Professional Fees incurred prior to delivery of the Carve-Out Trigger Notice and allowed at any time by this Court and payable under sections

328, 330 and 331 of the Bankruptcy Code; *provided that* after delivery of a Carve-Out Trigger Notice in accordance with clause (c) above, the amount in the Carve-Out Account (as defined below) shall be reduced on a dollar-for-dollar basis for Professional Fees incurred after the delivery of the Carve-Out Trigger Notice and allowed by this Court that are paid to the Professionals from the Carve-Out Account and the Carve-Out Account shall not be replenished for any such amounts so paid, and without prejudice to the rights of the Professionals or the Debtors to contest any such objection, nothing in this Interim Order shall be construed to impair the ability of any party to object to any fees, expenses, reimbursements or compensation sought by any such Professionals.  Upon receipt by the Debtors of a Carve-Out Trigger Notice and, in any event, prior to making any distribution of Collateral, Prepetition Collateral or the proceeds thereof to the Prepetition Secured Parties or otherwise, the Debtors shall promptly deposit an amount equal to the Professional Fees incurred and unpaid as of such date plus an amount equal to the Carve-Out Cap in a segregated account (the "Carve-Out Account") to be utilized solely for the payment of Professional Fees; provided, however, that the Debtors' depositing such monies into the Carve-Out Account shall not impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.  The Debtors' deposit of any such Carve-Out Account shall not reduce the amount of the Carve-Out or limit the Professionals eligible to be paid therefrom.  As described above, the Carve-Out shall be senior to all liens and claims securing the Prepetition Obligations, the Adequate Protection Liens and the Superpriority Claims, and any and all other forms of adequate protection, liens, security interests and administrative, superpriority or other claims granted pursuant to this Interim Order.

23.    *Investigation Period.*

(a)    The Adequate Protection Liens, the Superpriority Claims, and the Prepetition Liens shall be senior to, and no Collateral or Prepetition Collateral may be used to pay, any claims for services rendered by any of the professionals retained by the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or any successor case), any creditor or party in interest, any committee appointed in the Chapter 11 Cases or any other party in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, investigation, objection, defense or other contested matter against any or all of the Prepetition Secured Parties in connection with (i) invalidating, setting aside, avoiding, subordinating, recharacterizing, or challenging, in whole or in part, any claims or liens arising under or with respect to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens, the Collateral, or the Prepetition Collateral, or (ii) preventing, hindering, or delaying, whether directly or indirectly, any or all of the Prepetition Secured Parties' assertions or enforcement of their liens, security interests, or realization upon any of the Collateral or the Prepetition Collateral.  Notwithstanding anything herein to the contrary, any committee appointed in these Chapter 11 Cases shall have sixty (60) days after its formation, and parties in interest shall have seventy-five (75) days after entry of this Interim Order (the "Investigation Termination Date"), to investigate the validity, perfection, enforceability, and extent of the Prepetition Obligations and Prepetition Liens and any potential claims of the Debtors or their estates against the Prepetition Secured Parties in respect of the Prepetition Obligations and Prepetition Liens, "lender liability" claims and causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any other claims and causes of action (all such claims, defenses and other actions described in this paragraph are collectively

defined as the "Claims and Defenses"); *provided, however,* that the Investigation Termination Date may be extended if agreed to in writing by the First Lien Agent, in its sole discretion, with respect to the First Lien Prepetition Obligations, or the Initial Holders, in their sole discretion, with respect to the Secured Notes Obligations, or otherwise ordered by the Bankruptcy Court.

(b)    Any challenge to the Prepetition Obligations or Prepetition Liens or the assertion of any other claims or causes of action of the Debtors or their estates against the Prepetition Secured Parties must be made by a party in interest with standing who timely commences an adversary proceeding on or before the Investigation Termination Date. If no such action is filed on or before the Investigation Termination Date, all holders of claims and interests as well as other parties in interest shall be forever barred from bringing or taking any such action, and the Debtors' stipulations made herein and the release set forth in this Interim Order shall be binding on all parties in interest. If such an action is timely brought, any claim or action that is not brought shall be forever barred. In the event of a timely and successful challenge by a plaintiff in such an action, the Bankruptcy Court shall fashion the appropriate remedy with respect to the Prepetition Secured Parties after hearing from all parties.

(c)    Nothing in this Interim Order vests or confers on any committee appointed in the Chapter 11 Cases or any other party standing or authority to bring, assert, commence, continue, prosecute, or litigate any cause of action belonging to the Debtors or their estates, including, without limitation, the Claims and Defenses with respect to the Prepetition Loan Documents, the Prepetition Liens or the Prepetition Obligations.

24.    *Release.* Subject to the rights set forth in paragraph 23(a) of this Interim Order, the Debtors forever and irrevocably: (i) release, discharge, waive, and acquit the Prepetition Secured Parties, their participants and each of their respective affiliates, and each of their

respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, affiliates, and predecessors in interest (collectively, the "Released Parties") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations existing as of the Petition Date, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, with respect to or relating to the Prepetition Obligations, the Prepetition Liens, the Prepetition Loan Documents, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Prepetition Secured Parties; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability of the Prepetition Obligations and the Prepetition Liens.

25.    *Cash Management.*  The Debtors shall maintain their cash management arrangements in a manner consistent with that described in the applicable "first day" order, which order shall, for the avoidance of doubt, be acceptable to the First Lien Agent and the Initial Holders.

26.    *Equities of the Case.*  In light of the subordination of their liens to the Carve-Out, subject to the Final Hearing and entry of the Final Order, the Prepetition Secured Parties shall be entitled to all benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to such parties with respect to the proceeds, product, offspring or profits of any of their Collateral.

27.    *Additional Perfection Measures.*

(a)    Pursuant to this Interim Order, the Adequate Protection Liens are, and are deemed to be, valid, enforceable and perfected liens, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction) no further notice, filing, possession, control, or other act shall be required to effect such perfection, and all liens on any deposit accounts or securities shall, pursuant to this Interim Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104, and 9-106 of the New York Uniform Commercial Code as in effect as of the date hereof or similar applicable laws in favor of the Prepetition Secured Parties.

(b)    None of the Debtors or any of the Prepetition Secured Parties shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent to enter into control agreements, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Adequate Protection Liens.

(c)    The First Lien Agent, the Collateral Trustee and/or the Indenture Trustee may, but shall not be obligated to, obtain consents from any landlord, licensor or other party in interest, file mortgages, financing statements, notices of lien or similar instruments, or otherwise record or perfect such security interests and liens, in which case:

        i.     all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

        ii.    no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

28.     In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the First Lien Agent, the Collateral Trustee and/or the Indenture Trustee may, but shall not be obligated to, file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of Collateral or Prepetition Collateral, as applicable, and such filings by the First Lien Agent, the Collateral Trustee and/or the Indenture Trustee shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

29.     *Automatic Stay Modified.*  The automatic stay provisions of Bankruptcy Code sections 362 are hereby vacated and modified to the extent necessary to permit the First Lien Agent, the Collateral Trustee (at the direction of the First Lien Lenders) and/or the Indenture Trustee (at the direction of the Initial Holders), as applicable, in accordance with, and subject to, the terms of the Intercreditor Agreement, to exercise, upon the occurrence of the Termination Date, all rights and remedies provided for hereunder, and to take any or all of the following actions without further order of or application to this Court:  (i) terminate the Debtors' use of Cash Collateral; (ii) declare all Adequate Protection Obligations owed to the Prepetition Secured Parties to be immediately due and payable; (iii) upon five (5) business days' written notice to counsel to the Debtors identified herein and the U.S. Trustee, set off and apply any and all amounts in accounts maintained by the Debtors with the First Lien Agent, the Collateral Trustee

and/or the Indenture Trustee, as applicable, against the Adequate Protection Obligations and Prepetition Obligations and otherwise enforce rights against the Collateral for application towards the Adequate Protection Obligations and Prepetition Obligations; (iv) upon five (5) business days' notice to the Debtors, any committee appointed in the Chapter 11 Cases and the U.S. Trustee, take any and all actions necessary to take control of all Cash Collateral; and (v) upon five (5) business days' notice to the Debtors, any committee appointed in the Chapter 11 Cases and the U.S. Trustee, take any other actions or exercise any other rights or remedies permitted under this Interim Order or applicable law to effect the repayment and satisfaction of the Adequate Protection Obligations and Prepetition Obligations. The rights and remedies of the Prepetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that such parties may otherwise have.

      30.    *Collateral Rights.*

      (a)    In the event that any party who has both received notice of the Interim Hearing and holds a lien or security interest in Collateral or Prepetition Collateral that is junior and/or subordinate to the Adequate Protection Liens or the Prepetition Liens in such Collateral or Prepetition Collateral receives or is paid the proceeds of such Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any other source, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral in trust for the Prepetition Secured Parties and shall immediately turn over such proceeds to the First Lien Agent for application in accordance with the terms of the Prepetition Loan Documents and the Intercreditor Agreement.

      (b)    If the First Lien Agent, the Collateral Trustee and/or the Indenture Trustee (at the direction of the Initial Holders), as applicable, in accordance with, and subject to, the

terms of the Intercreditor Agreement, shall at any time exercise any of their respective rights and remedies hereunder or under applicable law in order to effect payment or satisfaction of the Adequate Protection Obligations and Prepetition Obligations or to receive any amounts or remittances due hereunder, including, without limitation, foreclosing upon and selling all or a portion of the Collateral (all solely to the extent not inconsistent with the requirements of this Interim Order), the First Lien Agent, the Collateral Trustee and/or the Indenture Trustee (at the direction of the Initial Holders), as applicable, in accordance with, and subject to, the terms of the Intercreditor Agreement, shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Collateral as the First Lien Agent, the Collateral Trustee (at the direction of the First Lien Lenders) and/or the Indenture Trustee (at the direction of the Initial Holders), as applicable, may determine.  Subject in all circumstances to the terms of the Intercreditor Agreement, no holder of a lien shall be entitled to object on the basis of the existence of any such lien to the exercise by the First Lien Agent, the Collateral Trustee (at the direction of the First Lien Lenders) and/or the Indenture Trustee (at the direction of the Initial Holders), as applicable, of its rights and remedies under this Interim Order or other applicable law or the Intercreditor Agreement to effect satisfaction of the Prepetition Obligations or Adequate Protection Obligations or to receive any amounts or remittances due hereunder.  All proceeds and payments delivered to the First Lien Agent and/or the Indenture Trustee (at the direction of the Initial Holders), as applicable, pursuant to this paragraph 30 may be applied to the Adequate Protection Obligations or Prepetition Obligations in accordance with this Interim Order, the Prepetition Loan Documents and the Intercreditor Agreement.

(c)    The Debtors shall not sell, lease, transfer or otherwise dispose of their interest in the Collateral outside the ordinary course of business, or seek authority of this Court

to do any of the foregoing, without the prior written consent of the First Lien Agent and/or the Indenture Trustee (at the direction of the Initial Holders).  In the event of any such sale, lease, transfer, license, or other disposition of property of the Debtors that constitutes Collateral in violation of this Interim Order, the Debtors are authorized and directed, without further notice or order of this Court, to immediately pay to the First Lien Agent, in accordance with the terms of the Intercreditor Agreement, 100% of the net cash proceeds resulting therefrom no later than the third business day following receipt of such proceeds, solely to the extent that, after giving effect to such payment, there remains in the Debtors' estates cash in an amount equal to the sum of: (I) any amounts that remain unspent pursuant to the Approved Budget; (II) the Carve-Out; (III) any other amounts contemplated by the Support Agreement as requiring payment; (IV) any other amounts that have been approved in prior orders of the Bankruptcy Court and with respect to which the Debtors are entitled to use Cash Collateral to pay pursuant to this Interim Order.

(d)     In the event of any casualty, condemnation, or similar event with respect to property that constitutes Collateral, the Debtors are authorized and directed to pay to the First Lien Agent, in accordance with the terms of the Intercreditor Agreement, 100% of any insurance proceeds, condemnation award, or similar payment no later than the third business day following receipt of payment by the Debtors, solely to the extent that, after giving effect to such payment, there remains in the Debtors' estate cash in an amount equal to the sum of:  (I) any amounts that remain unspent pursuant to the Approved Budget; (II) the Carve-Out; (III) any other amounts contemplated by the Support Agreement as requiring payment; (IV) any other amounts that have been approved in prior orders of the Bankruptcy Court and with respect to which the Debtors are entitled to use Cash Collateral to pay pursuant to this Interim Order.

31.    *Preservation of Rights Granted Under the Interim Order.*

(a)    During the Interim Period, no claim or lien, other than the Carve-Out and the Permitted Liens, having a lien or priority superior to or *pari passu* with those granted by this Interim Order to the First Lien Agent or the Collateral Trustee on behalf of the First Lien Lenders or the Indenture Trustee on behalf of the Noteholders shall be granted or allowed while any portion of the First Lien Prepetition Obligations or the Secured Notes Obligations, respectively, remains outstanding, unless the First Lien Agent, the Collateral Trustee (at the direction of the First Lien Lenders) or, subject to the terms of the Intercreditor Agreement, the Indenture Trustee (at the direction of the Initial Holders), as applicable, has consented in writing prior to such grant or allowance.

(b)    During the Interim Period, the liens and security interests included in the Adequate Protection shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551 or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise, except to the extent permitted hereunder.

(c)    If an order dismissing any of the Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise is at any time entered, (i) such order shall provide, in accordance with Bankruptcy Code sections 105 and 349, that until all Prepetition Obligations shall have been paid and satisfied in full, the Adequate Protection Liens shall (A) continue in full force and effect, (B) remain binding on all parties in interest and (C) maintain the priorities and status provided in this Interim Order and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (i).

(d)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity of Adequate Protection Obligations incurred prior to the actual receipt of written notice by the First Lien Agent, the Collateral Trustee and the Indenture Trustee of the effective date of such reversal, stay, modification or vacatur or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the Adequate Protection.  Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral prior to the actual receipt of written notice by the First Lien Agent, the Collateral Trustee and the Indenture Trustee of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and each Prepetition Secured Party shall be entitled to all the rights, remedies, privileges and benefits granted in Bankruptcy Code section 364(e) and this Interim Order with respect to all uses of Cash Collateral and all Adequate Protection.

32.    *Priorities Among Prepetition Secured Parties.*  Notwithstanding anything to the contrary herein or in any other order of this Court, (a) in determining the relative priorities and rights of the Prepetition Secured Parties as among themselves (including, without limitation, the relative priorities and rights of the Prepetition Secured Parties with respect to Adequate Protection granted hereunder), such priorities and rights shall continue to be governed by the Intercreditor Agreement and the other Prepetition Loan Documents, (b) the Secured Note Parties shall not be permitted to exercise any right or remedy under this Interim Order, the Bankruptcy Code or the Secured Notes Documents to the extent the exercise of any such right or remedy is inconsistent with the Intercreditor Agreement, and (c) this Interim Order shall not amend, waive or modify any of the provisions of the Intercreditor Agreement, all of which shall remain in full

force and effect. The Intercreditor Agreement constitutes a "subordination agreement" within the meaning of Bankruptcy Code section 510(a). With respect to any provision of this Interim Order that relates to use of Cash Collateral and that requires or is conditioned upon the consent, approval or waiver by both the First Lien Agent, on the one hand, and either or both of the Initial Holders and the Indenture Trustee, on the other hand, in the event that the First Lien Agent, on the one hand, and either or both of the Initial Holders and the Indenture Trustee, on the other hand, make conflicting decisions with respect to giving or withholding such consent, approval or waiver, then in accordance with the provisions of the Intercreditor Agreement, the decision of the First Lien Agent with respect to such consent, approval or waiver shall govern, and the Initial Holders and/or Indenture Trustee, as the case may be, shall be conclusively deemed to have given or withheld the same consent, approval or waiver that was given or withheld by the First Lien Agent; *provided, however,* that the rights and remedies of the Initial Holders shall, in such event, be determined in accordance with the terms of the Support Agreement.

33.     *Order Governs.* In the event of any inconsistency between or among (a) the terms and provisions of this Interim Order, on the one hand, and (b) the Motion or any other order of this Court, on the other hand, the provisions of this Interim Order shall govern.

34.     *Binding Effect; Successors and Assigns.* The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, each Prepetition Secured Party, each Debtor and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of each Prepetition Secured Party, each Debtor and their respective successors and assigns. The provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity

41

holders, and all other parties in interest, including any committee appointed in these Chapter 11 Cases.

35.    *No Third Party Beneficiary.*  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

36.    *No Waiver.* This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

37.    *Rights Reserved.*  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (i) any Prepetition Secured Party's right to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection, (ii) any of the rights of any Prepetition Secured Party under the Bankruptcy Code or under applicable nonbankruptcy law.  Nothing contained herein shall be deemed a finding by the Court or an acknowledgement by any Prepetition Secured Party that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Party against any Diminution in Value of their respective interests in the Prepetition Collateral.  Notwithstanding anything herein, the entry of this Interim Order (x) is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' rights, subject to and in accordance with the terms of the Support Agreement, to the extent effective, to seek the authority to use Cash Collateral without the consent of the Prepetition Secured Parties; (y) does not constitute an admission nor shall be deemed an admission by the Debtors that the terms and conditions of this Interim Order are required to adequately protect the Prepetition Secured Parties in the event the Debtors seek to use

Cash Collateral without the consent of the Prepetition Secured Parties and (z) does not supersede or otherwise affect the terms and conditions set forth in the Support Agreement.

38.    *No Waiver by Failure to Seek Relief.*  The delay or failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the Prepetition Secured Parties.

39.    *Final Hearing.*  The Final Hearing will be held by this Court on [—] March 27, 2014 at [—] 11:00 a.m. (prevailing Eastern time).

40.    *Notice.*  The notice procedures set forth in the Motion are good and sufficient notice and satisfy Bankruptcy Rule 9014 by providing the counterparties with a notice and an opportunity to object and be heard at a hearing.  By [—] March 5, 2014, the Debtors shall serve a copy of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing and to any party that has filed a request for notices with this Court.  Any objection to the relief sought at the Final Hearing must be in writing and, by [—] 12:00 pm (prevailing Eastern Time) on [—] March 20, 2014 (the "Objection Deadline") be: (a) filed with the Clerk of the United States Bankruptcy Court, District of Delaware (with a copy to chambers) and (b) actually received by (i) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Patrick Nash, Esq. and Noah Ornstein, Esq.; (ii) proposed local counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705, Attn: Laura Davis Jones, Esq.; (iii) counsel to the First Lien Agent, Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800, Chicago, Illinois 60606, Attn: Richard Levy, Esq.; (iv) local counsel

to the First Lien Agent, Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: Mark Collins, Esq.; (v) counsel to the Collateral Trustee, Alston & Bird LLP, 1201 West Peachtree Street, One Atlantic Center, Atlanta, Georgia 30309-3424, Attn: David A. Wender, Esq.; (vi) local counsel to the Collateral Trustee, Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801-1494, attn.: Jeffrey R. Waxman, Esq.; (vii) counsel to the Initial Holders, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036-6745, Attn: Ira Dizengoff, Esq. and Meredith Lahaie, Esq.; (viii) local counsel to the Initial Holders, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attn: Stanley Tarr, Esq.; and (ix) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Richard Shepacarter, Esq.  A reply to any such objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern time) on the day that is at least two (2) business days before the date of the applicable hearing.

41.    *Entry of Interim Order; Effect.*  This Interim Order shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof, notwithstanding the possible application of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Interim Order on this Court's docket in the Chapter 11 Cases.

42.    *Retention of Jurisdiction.*  This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Interim Order.

43.    *Waiver of Requirement to File Proofs of Claim.*  The Prepetition Secured Parties shall not be required to file proofs of claim with respect to any of the Prepetition Obligations.

Dated: March 4, 2014
      Wilmington, Delaware

United States Bankruptcy Judge
The Honorable Brendan L. Shannon